UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MADISON, FLORIDA;<br>MADISON COUNTY, FLORIDA; and<br>ITT LLC (as Successor-in-Interest to<br>ITT THOMPSON INDUSTRIES, INC.),<br><br>Defendants. | Civil Action No. |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States, acting on behalf of the U.S. Environmental Protection Agency ("EPA"), Region 4, alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action brought under Sections 106, 107(a), and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607(a), and 9613(g)(2).

2. In this action, the United States seeks performance by Defendants City of Madison, Florida, Madison County, Florida, and ITT LLC (collectively, "Defendants") of certain response actions selected by EPA in a September 2022 Amended Record of Decision for the Madison County Sanitary Landfill Superfund Site in Madison, Florida ("Site").

3. The United States also seeks recovery of costs incurred and to be incurred in connection with the Site.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345 and Sections 106, 107, and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607, & 9613(b).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and Sections 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) & 9613(b), because the releases or threatened releases of hazardous substances that gave rise to these claims occurred in this district, and because the Site is located in this district.

## THE PARTIES

6. The United States is authorized to seek costs of removal or remedial action, as well as injunctive relief necessary to abate an imminent and substantial endangerment to the public health or welfare or the environment that may result

from an actual or threatened release of a hazardous substance at or from a facility. 42 U.S.C. §§ 9606(a), 9607(a).

7. Defendant City of Madison (the "City") is a municipal corporation organized under the laws of the State of Florida. The City is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

8. Defendant Madison County, Florida (the "County") is a political subdivision of the State of Florida. The County is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

9. Defendant ITT LLC ("ITT") is a limited liability company organized under the laws of the State of Indiana. ITT is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

10. Defendant ITT is the successor to two companies with similar names: ITT Corporation and ITT Thompson Industries, Inc. ("ITT Thompson").

11. ITT Thompson merged with and into ITT Corporation on October 31, 2015.

12. ITT Corporation merged with and into Defendant ITT on May 16, 2016.[1]

[1] For purposes of simplifying this Complaint, ITT and its predecessors ITT Thompson and ITT Corporation will be referred to collectively as "ITT."

## STATUTORY BACKGROUND

13. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

14. Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

15. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority. In EPA Region 4, this authority has been further delegated to the Director of the Superfund and Emergency Management Division.

16. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or operated by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --
>
> > (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the National Contingency Plan . . .

17. Under Section 101(29) of CERCLA, 42 U.S.C. § 9601(29), the term "disposal" includes, among other things, the "discharge, deposit, injection, dumping, spilling, leaking, or placing" of wastes into or on any land or water so that such wastes or any constituent thereof "may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

18. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States also is authorized to seek injunctive relief necessary to abate an imminent and substantial endangerment to the public health or welfare or the environment that may result from an actual or threatened release of a hazardous substance at or from a facility.

## GENERAL ALLEGATIONS

### A. Site Ownership, Operation, and Disposal History

19. The Site consists of approximately 90 acres of a 133-acre parcel of land currently owned by the County, and is located at 2060 Rocky Ford Road, in Madison, Madison County, Florida.

20. The Site operated as a landfill from approximately 1970 through 1988 and accepted for disposal municipal, domestic, and industrial waste.

21. The City owned the Site from May 7, 1971, to March 31, 1980, and operated the Site during its ownership.

22. The County has owned the Site since March 31, 1980, and it operated the Site from that time through 1992.

23. During the Site's years of operation, the main portion of the Site was primarily used as an unlined trench-and-fill system. Waste was deposited in trenches of varying sizes, but typically 50 feet by 30 feet and approximately 15–25

feet in depth, and covered with excavated material. As of April 1992, the County was depositing approximately 40 tons of waste per day into the open trenches.

24. The Site contains two other main areas: (1) a 9-acre Yard Trash Area, primarily used for large bulk debris from construction and demolition activities, as well as drums containing industrial waste, and (2) an Acid Disposal Area that was used for disposal of acid wash water.

25. ITT arranged with the City for disposal of hazardous substances at the Site beginning in 1971.

26. In May 1992, the Florida Department of Environmental Regulation ordered the landfill to be closed.

**B. Response Actions**

27. In May 1985, EPA conducted a Preliminary Assessment/Site Inspection, including sampling the groundwater at the Site. EPA's groundwater samples showed elevated concentrations of trichloroethene ("TCE"), methylene chloride, and trans-1,2-dichloroethene at the Site.

28. On June 24, 1988, EPA proposed adding the Site to the National Priorities List ("NPL"), in accordance with section 105 of CERCLA, 42 U.S.C. § 9605. *See* 40 C.F.R. Part 300, Appendix B.

29. On June 11, 1990, EPA entered an Administrative Order on Consent ("1990 AOC") with Defendants. *See* 42 U.S.C. § 9622(d)(3). Under the 1990 AOC,

Defendants were responsible for developing and implementing a Remedial Investigation and Feasibility Study ("RI/FS") for the Site.

30. On August 30, 1990, EPA listed the Site on the NPL by publication in the Federal Register, 55 Fed. Reg. 35502.

31. Defendants completed a Remedial Investigation of the Site in April 1992 and a Feasibility Study for the Site in July 1992, in accordance with 40 C.F.R. § 300.430 and the 1990 AOC.

32. Soil and groundwater were sampled as part of the Remedial Investigation field work.

a. Monitoring well samples showed elevated concentrations of TCE and cis-1,2- dichloroethene ("DCE"), as well as the presence of chloromethane, vinyl chloride, 1,1-dichloroethene, 1,1-dichloroethane, 1,1,2-trichloroethane, trichlorofluoromethane, dichlorodifluoromethane, chloroform, and acetone in the groundwater. TCE, cis-1,2-DCE, and chloromethane were detected at downgradient monitoring wells.

b. Methylene chloride, acetone, toluene, 1,1-DCE, and 1,2 dichloroethane, as well as barium, beryllium, and cobalt were detected in the soil at the Site.

33. EPA issued a final Record of Decision ("ROD") on September 28, 1992, which set forth the selected Remedial Action to be implemented at the Site.

34. On March 17, 1993, EPA and ITT executed a Modification of Administrative Order by Consent, which modified the 1990 AOC. Under that Modification, ITT agreed to perform a Remedial Design for the Site.

35. On November 10, 1993, EPA and ITT executed an Amendment to Modification of Administrative Order on Consent, amending some terms of the Modification but leaving ITT responsible for performing the Remedial Design for the Site.

36. On November 10, 1994, pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), EPA issued a Unilateral Administrative Order ("UAO") to Defendants, ordering them to develop the Remedial Design and perform the Remedial Action set forth in the 1992 ROD. On February 7, 1995, Defendants agreed to comply with the UAO.

37. ITT implemented the Remedial Design pursuant to the 1994 UAO.

38. EPA completed a Five-Year Review in 2010 and determined that the original remedy was insufficient to meet the groundwater remedial goals and did not sufficiently address the emerging groundwater contaminant 1,4-dioxane.

39. Defendants completed a Final Focused Feasibility Study on November 15, 2013, that developed and evaluated remedial alternatives to address 1,4-dioxane in groundwater.

40. On September 9, 2022, EPA selected a new remedy for the groundwater at the Site and issued an Amended Record of Decision ("AROD"). Specifically, EPA changed the groundwater remedy from pump-and-treat to enhanced reductive dichlorination.

41. EPA and Defendants entered into an Administrative Settlement Agreement and Order on Consent for Remedial Design, effective August 16, 2023 ("2023 AOC"). The 2023 AOC requires Defendants to perform the remedial design set forth in the AROD. That work is ongoing.

**SPECIFIC ALLEGATIONS**

42. TCE, cis-1,2-DCE, chloromethane, 1,1-dichloroethane, 1,1-dichloroethene, 1,1,2-trichloroethane, trichlorofluoromethane, dichlorodifluoromethane, 1,2 dichloroethane, 1,4-dioxane, chloroform, acetone, methylene chloride, toluene, and vinyl chloride are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because they are listed at 40 C.F.R. § 302.4 App. A pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

43. TCE, cis-1,2-DCE, chloromethane, 1,1-dichloroethane, 1,1-dichloroethene, 1,1,2-trichloroethane, trichlorofluoromethane, dichlorodifluoromethane, 1,2 dichloroethane, 1,4-dioxane, chloroform, acetone, methylene chloride, toluene, and vinyl chloride have been deposited, disposed of, placed, or otherwise come to be located at the Site.

44. The Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), because the Site is a landfill and/or a site or area where hazardous substances have been "deposited, stored, disposed of, or placed, or otherwise come to be located."

45. There has been a "release" or threatened "release" of "hazardous substances" into the "environment" at or from the Site, as those terms are defined in CERCLA Sections 101(8) and 101(22), 42 U.S.C. §§ 9601(8) and (22), because the hazardous substances described in Paragraphs 42–43 have been detected in the soil and/or groundwater at the Site.

46. The City and the County owned the Site at the time of disposal of hazardous substances, within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

47. From 1971 through 1985, ITT arranged for disposal of hazardous substances at the Site, within the meaning of CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

48. During operations at the Site, hazardous substances including the substances described in Paragraphs 42–43 were deposited, dumped, spilled, leaked, and/or placed and thus "disposed" at the Site, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29).

49. As of February 5, 2025, the United States has incurred at least $38,451.59 in unreimbursed "response" costs, as defined by CERCLA Section 101(25), 42 U.S.C. § 9601(25), in connection with the Site.

50. In undertaking response actions to address the release and threatened release of hazardous substances at the Site, the United States will continue to incur response costs.

51. EPA's response actions taken at or in connection with the Site and the costs incurred incident thereto were not inconsistent with the National Contingency Plan.

## FIRST CLAIM FOR RELIEF

*United States' Claim for Response Costs Under CERCLA Section 107*

52. Paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

53. The City is within the class of liable persons described in CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2), because it owned and operated the Site at the time hazardous substances were disposed of.

54. The County is within the class of liable persons described in CERCLA Sections 107(a)(1) and (2), 42 U.S.C. §§ 9607(a)(1) & (2), because it both is the current owner of the Site and owned and operated the Site at the time hazardous substances were disposed of.

55. ITT is within the class of liable persons described in CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3), because it arranged for the disposal of hazardous substances at the Site.

56. Under CERCLA Section 107(a), 42 U.S.C. § 9607(a), Defendants are jointly and severally liable for all response costs incurred by the United States in connection with the Site, including enforcement costs and interest.

**SECOND CLAIM FOR RELIEF**

*United States' Claim for Declaratory Judgment Under CERCLA Section 113(g)(2)*

57. Paragraphs 1 through 56 are re-alleged and incorporated herein by reference.

58. CERCLA Subsection 113(g)(2), 42 U.S.C. § 9613(g)(2), specifies that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs . . . ."

59. The United States will continue to incur response costs associated with the Site that are recoverable as response costs under CERCLA.

60. Pursuant to CERCLA Section 113(g), 42 U.S.C. § 9613(g), a declaratory judgment should be entered against each of the Defendants holding each of them jointly and severally liable to the United States for future response costs incurred by the United States that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Site.

**THIRD CLAIM FOR RELIEF**

*United States' Claim for Injunctive Relief Under CERCLA Section 106*

61. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

62. EPA has determined that there is or may be an imminent and substantial endangerment to the public health and welfare or the environment because of actual or threatened releases of hazardous substances at or from the Site.

63. EPA has determined that the response actions selected in the September 2022 AROD are necessary to abate the danger or threat at or from the Site.

64. Under CERCLA Section 106(a), 42 U.S.C. § 9606(a), each of the Defendants is jointly and severally liable for injunctive relief to abate the danger or threat presented by a release or threatened release of hazardous substances into the environment at or from the Site.

65. Under CERCLA Section 106(a), 42 U.S.C. § 9606(a), each of the Defendants is jointly and severally liable to undertake the response actions described in the September 2022 AROD.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1. Enter judgment in favor of the United States and against the Defendants, jointly and severally, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by the United States, including enforcement costs and prejudgment interest, for response actions taken in connection with the Site;

2. Enter a declaratory judgment of liability in favor of the United States and against the Defendants, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding on any subsequent action or actions to recover further response costs incurred by the United States for response actions taken in connection with the Site;

3. Order the Defendants to abate the conditions at the Site that may present an imminent and substantial endangerment to the public health or welfare or the environment by undertaking the remedy selected in the September 2022 Amended Record of Decision, pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a);

4. Award the United States its costs of this action; and

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy & Natural Resources Division
U.S. Department of Justice

/s/ Rachael Amy Kamons
RACHAEL AMY KAMONS (MD Bar)
Environmental Enforcement Section
Energy & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 598-9739
Email: rachael.kamons@usdoj.gov

OF COUNSEL:

DANIELLE WEIT SAVAGE
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA, Region 4