**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

Plaintiff,

v. Civil Action No. ______

CITY OF MADISON, FLORIDA; ITT LLC (as Successor-in-Interest to ITT THOMPSON INDUSTRIES, INC.); and MADISON COUNTY, FLORIDA, et al.,

Defendants.

**CONSENT DECREE FOR REMEDIAL ACTION**

## TABLE OF CONTENTS


| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II. | JURISDICTION AND VENUE | 4 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 5 |
| V. | OBJECTIVES | 8 |
| VI. | PERFORMANCE OF THE WORK | 8 |
| VII. | PROPERTY REQUIREMENTS | 10 |
| VIII. | FINANCIAL ASSURANCE | 11 |
| IX. | INDEMNIFICATION AND INSURANCE | 15 |
| X. | PAYMENTS FOR RESPONSE COSTS | 16 |
| XI. | FORCE MAJEURE | 17 |
| XII. | DISPUTE RESOLUTION | 18 |
| XIII. | STIPULATED PENALTIES | 19 |
| XIV. | COVENANTS BY PLAINTIFF | 21 |
| XV. | COVENANTS BY SETTLING DEFENDANTS | 23 |
| XVI. | EFFECT OF SETTLEMENT; CONTRIBUTION | 24 |
| XVII. | RECORDS | 24 |
| XVIII. | NOTICES AND SUBMISSIONS | 26 |
| XIX. | APPENDIXES | 28 |
| XX. | MODIFICATIONS TO DECREE | 28 |
| XXI. | SIGNATORIES | 29 |
| XXII. | PRE-ENTRY PROVISIONS | 29 |
| XXIII. | INTEGRATION | 29 |
| XXIV. | FINAL JUDGMENT | 29 |

# I. BACKGROUND

1. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter under sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

2. The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Madison County Sanitary Landfill Superfund Site in Madison, Florida ("Site"), together with accrued interest; and (2) performance by the defendants of a response action at the Site consistent with the National Contingency Plan, 40 C.F.R. part 300 ("NCP").

3. In accordance with the NCP and section 121(f)(1)(F) of CERCLA, EPA notified the State of Florida ("State") on September 22, 2022, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and to be a party to this Consent Decree ("Decree").

4. In accordance with section 122(j)(1) of CERCLA, EPA notified the United States Fish and Wildlife Service on September 22, 2022, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Decree.

5. The defendants that have entered into this Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

6. In accordance with section 105 of CERCLA, EPA listed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. part 300, Appendix B, by publication in the Federal Register on August 30, 1990, 55 Fed. Reg. 35502.

7. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, Settling Defendants completed a Remedial Investigation for the Site in April, 1992, and a Feasibility Study for the Site in July, 1992, in accordance with 40 C.F.R. § 300.430. Settling Defendants completed a Final Focused Feasibility Study on November 15, 2013 that developed and evaluated remedial alternatives to address 1,4-dioxane in groundwater.

8. In accordance with section 117 of CERCLA and 40 C.F.R § 300.430(f), EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on December 10, 2021, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting and comments received are available to the public as part of the administrative record upon which the Regional Administrator Delegate, EPA Region 4, based the selection of the response action.

9. EPA selected a remedial action to be implemented at the Site, which is embodied in a final Record of Decision ("Record of Decision" or "ROD"), executed on September 28, 1992. The Record of Decision includes a summary of responses to the public comments.

10. On November 10, 1994, pursuant to Section 106(a) of CERCLA, EPA Region 4

issued a unilateral administrative order to Settling Defendants, ordering them to develop the remedial design and perform the remedial action for the remedy set forth in the 1992 ROD. On February 7, 1995, the parties agreed to comply with the unilateral administrative order.

11. On September 9, 2022, EPA selected a new remedy for the groundwater in an Amended Record of Decision ("AROD"). Notice of the final plan was published in accordance with section 117(b) of CERCLA.

12. On August 16, 2023, EPA Region 4 signed an Administrative Settlement

Agreement and Order on Consent for Remedial Design with the Settling Defendants to perform the Remedial Design pursuant to the 2022 AROD. Remedial Design work is ongoing.

13. Based on the information currently available, EPA has determined that the Work will be properly and promptly conducted by Settling Defendants if conducted in accordance with this Decree.

14. The Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345, and sections 106, 107 and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. Settling Defendants may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III. PARTIES BOUND

16. This Decree is binding upon the United States and upon Settling Defendants and their successors. Unless the United States otherwise consents, (a) any change in ownership or corporate or other legal status of any Settling Defendant, including any transfer of assets, or (b) any Transfer of the Site or any portion thereof, does not alter any of Settling Defendants'

obligations under this Decree. Settling Defendants' responsibilities under this Decree cannot be assigned except under a modification executed in accordance with ¶ 80.

17. In any action to enforce this Decree, Settling Defendants may not raise as a defense the failure of any of their officers, directors, employees, agents, contractors, subcontractors, or any person representing Settling Defendants to take any action necessary to comply with this Decree. Settling Defendants shall provide notice of this Decree to each person representing Settling Defendants with respect to the Site or the Work. Settling Defendants shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## IV. DEFINITIONS

18. Subject to the next sentence, terms used in this Decree that are defined in CERCLA or the regulations promulgated under CERCLA have the meanings assigned to them in CERCLA and the regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"ASAOC for Remedial Design" means the Agreement and Order on Consent for Remedial Design that EPA Region 4 signed on August 16, 2023, with Settling Defendants to perform the Remedial Design for the remedy selected for the Site in the AROD.

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" means this consent decree, all appendixes attached hereto (listed in Section 0), and all deliverables incorporated into the Decree under ¶ 6.6 of the SOW. If there is a conflict between a provision in Sections I through XXIV and a provision in any appendix or deliverable, the provision in Sections I through XXIV controls.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

"Fund" means the Hazardous Substance Superfund established under section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States: (a) pays between August 10, 2023 and the Effective Date; and (b) pays after the Effective Date in implementing, overseeing, or enforcing

this Decree, including: (i) in developing, reviewing and approving deliverables generated under this Decree; (ii) in overseeing Settling Defendants' performance of the Work; (iii) in assisting or taking action to obtain access or use restrictions under ¶ 26.e; (iv) in securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including any compensation paid; (v) in taking action under ¶ 34 (Access to Financial Assurance); (vi) in taking response action described in ¶ 62 because of Settling Defendants' failure to take emergency action under ¶ 4.4 of the SOW; (vii) in implementing a Work Takeover under ¶ 25; (viii) in implementing community involvement activities including the cost of any technical assistance grant provided under section 117(e) of CERCLA; (ix) in enforcing this Decree, including all costs paid under Section XII (Dispute Resolution) and all litigation costs; and (x) in conducting periodic reviews in accordance with section 121(c) of CERCLA. Future Response Costs also includes all Interest accrued after August 10, 2023 on EPA's unreimbursed costs (including Past Response Costs) under section 107(a) of CERCLA.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (*i.e.*, easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Fund, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under section 105 of CERCLA, codified at 40 C.F.R. part 300, and any amendments thereto.

"Owner Settling Defendant" means the following Settling Defendant who owns or controls all or a portion of the Site: Madison County, Florida.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" means the United States and Settling Defendants.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States paid in connection with the Site through

August 10, 2023, plus all interest on such costs accrued under section 107(a) of CERCLA through such date.

"Performance Standards" means the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the Record of Decision.

"Plaintiff" means the United States.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k, (also known as the Resource Conservation and Recovery Act).

"Record of Decision" means the EPA decision document that memorializes the selection of the remedial action relating to the Site signed on September 28, 1992, by the Regional Administrator, EPA Region 4, and all attachments thereto, along with EPA's AROD relating to the Site, signed by the Director of the Region 4 Superfund and Emergency Management Division on September 9, 2022. The Record of Decision is attached as Appendix A. The AROD is attached as Appendix B.

"Remedial Action" means the remedial action selected in the AROD.

"Remedial Design" means those activities undertaken by Settling Defendants under the ASAOC for Remedial Design to develop plans and specifications for implementing the Remedial Action as set forth in the SOW.

"Scope of the Remedy" means the scope of the remedy set forth in ¶ 1.3 of the SOW.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendants" means the settling defendants identified in Appendix E. As used in this Decree, this definition means all settling defendants, collectively, and each settling defendant, individually.

"Site" means the Madison County Sanitary Landfill Superfund Site, comprising approximately 90 acres, located at 2060 Rocky Ford Road in Madison, Madison County, Florida, and depicted generally on the map attached as Appendix D.

"Special Account" means the special account, within the Fund, established for the Site by EPA under section 122(b)(3) of CERCLA.

"State" means the State of Florida.

"Statement of Work" or "SOW" means the document attached as Appendix B, which describes the activities Settling Defendants must perform to implement and maintain the effectiveness of the Remedial Action.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"UAO" shall mean the Unilateral Administrative Order issued by EPA on November 10, 1994, for response actions at the Site.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" means (a) any "hazardous substance" under Section 101(14) of CERCLA; (b) any pollutant or contaminant under section 101(33) of CERCLA; (c) any "solid waste" under section 1004(27) of RCRA; and (d) any "hazardous waste" under Section 403.703(14), Florida Statutes.

"Work" means all obligations of Settling Defendants under Sections VI (Performance of the Work) through IX (Indemnification and Insurance).

"Work Takeover" means EPA's assumption of the performance of any of the Work in accordance with ¶ 25.

## V. OBJECTIVES

19. The objectives of the Parties in entering into this Decree are to protect public health, welfare, and the environment through the design, implementation, and maintenance of a response action at the Site by Settling Defendants, to pay response costs of Plaintiff, and to resolve and settle the claims of Plaintiff against Settling Defendants as provided in this Decree.

## VI. PERFORMANCE OF THE WORK

20. Settling Defendants shall finance, develop, implement, operate, maintain, and monitor the effectiveness of the Remedial Action all in accordance with the SOW, any modified SOW and all EPA-approved, conditionally approved, or modified deliverables as required by the SOW or modified SOW.

21. Nothing in this Decree and no EPA approval of any deliverable required under this Decree constitutes a warranty or representation by EPA that completion of the Work will achieve the Performance Standards.

22. Settling Defendants' obligations to finance and perform the Work and to pay amounts due under this Decree are joint and several. In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to participate in the implementation of the Decree, the remaining Settling Defendants shall complete the Work and make the payments.

23. **Modifications to the Remedial Action and Further Response Actions**

a. Nothing in this Decree limits EPA's authority to modify the Remedial Action or to select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Nothing in this Decree limits Settling Defendants' rights, under sections 113(k)(2) or 117 of CERCLA, to comment on any modified or further response actions proposed by EPA.

b. If EPA modifies the Remedial Action in order to achieve or maintain the Performance Standards, or both, or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy, then Settling Defendants shall implement the modification as provided in ¶ 23.d.

c. If EPA selects a further response action for the Site because a reopener condition in ¶ 60 is satisfied, then, subject to ¶ 80, Settling Defendants shall implement the further response action as provided in ¶ 23.d.

d. Upon receipt of notice from EPA that it has modified the Remedial Action as provided in ¶ 23.b or selected a further response action as provided in ¶ 23.c and requesting that Settling Defendants implement the modified Remedial Action or further response action, Settling Defendants shall implement the modification or further response action, subject to their right to initiate dispute resolution under Section XII within 30 days after receipt of EPA's notice. Settling Defendants shall modify the SOW, or related work plans, or both in accordance with the Remedial Action modification or further response action or, if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute. The Remedial Action modification or further response action, the approved modified SOW, and any related work plans will be deemed to be incorporated into and enforceable under this Decree.

24. **Compliance with Applicable Law**. Nothing in this Decree affects Settling Defendants' obligations to comply with all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the Record of Decision and the SOW. The activities conducted in accordance with this Decree, if approved by EPA, will be deemed to be consistent with the NCP as provided under section 300.700(c)(3)(ii).

25. **Work Takeover**

a. If EPA determines that Settling Defendants (i) have ceased to perform any of the Work required under this Section; (ii) are seriously or repeatedly deficient or late in performing the Work required under this Section; or (iii) are performing the Work required under this Section in a manner that may cause an endangerment to human health or the environment, EPA may issue a notice of Work Takeover to Settling Defendants, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Settling Defendants must remedy the circumstances giving rise to the notice. The Remedy Period will be 20 days, unless EPA determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be 10 days.

b. If, by the end of the Remedy Period, Settling Defendants do not remedy to EPA's satisfaction the circumstances giving rise to the notice of Work Takeover, EPA may notify Settling Defendants and, as it deems necessary, commence a Work Takeover.

c. EPA may conduct the Work Takeover during the pendency of any dispute under Section XII but shall terminate the Work Takeover if and when: (i) Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to the notice of Work Takeover; or

(ii) upon the issuance of a final determination under Section XII (Dispute Resolution) that EPA is required to terminate the Work Takeover.

## VII. PROPERTY REQUIREMENTS

26. **Agreements Regarding Access and Noninterference**

a. As used in this Section, "Affected Property" means any real property, including the Site, where EPA determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.

b. Settling Defendants shall use best efforts to secure from the owner(s) other than an Owner Settling Defendant, of all Affected Property, an agreement, enforceable by Settling Defendants and by Plaintiff, requiring such owner to provide Plaintiff and Settling Defendants, and their respective representatives, contractors, and subcontractors with access at all reasonable times to such owner's property to conduct any activity regarding the Decree, including the following:

(1) implementing the Work and overseeing compliance with the Decree;

(2) conducting investigations of contamination at or near the Site;

(3) assessing the need for, planning, or implementing additional response actions at or near the Site;

(4) determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

(5) implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

c. Further, each agreement required under ¶ 26.b must commit the owner to refrain from using its property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment as a result of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

d. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendants would use to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements.

e. Settling Defendants shall provide to EPA a copy of each agreement required under ¶ 26.b. If Settling Defendants cannot accomplish what is required through best efforts in a timely manner, they shall notify EPA, and include a description of the steps taken to achieve the requirements. If the United States deems it appropriate, it may assist Settling Defendants, or take independent action, to obtain such access or use restrictions.

27. **Access and Noninterference by Owner Settling Defendant**. The Owner Settling Defendant shall: (a) provide Plaintiff and the Settling Defendants, and their representatives, contractors, and subcontractors with access at all reasonable times to the Site to conduct any activity regarding the Decree, including those listed in ¶ 26.b; and (b) refrain from using the Site in any manner that EPA determines will pose an unacceptable risk to human health or to the environment because of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in ¶ 26.c.

28. If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendants shall cooperate with EPA's efforts to secure and ensure compliance with such Institutional Controls.

## VIII. FINANCIAL ASSURANCE

29. To ensure completion of the Work required under Section VI, Settling Defendants shall secure financial assurance, initially in the amount of $4,763,451.00 ("Estimated Cost of the Work"), for the benefit of EPA. The financial assurance must: (i) be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA; and (ii) be satisfactory to EPA. As of the date of lodging of this Decree, the sample documents can be found under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/. Settling Defendants may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, insurance policies, or some combination thereof. The following are acceptable mechanisms:

a. a surety bond guaranteeing payment, performance of the Work, or both, that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b. an irrevocable letter of credit, payable to EPA or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c. a trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d. a policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency;

e. a demonstration by one or more Settling Defendants that they meet the relevant test criteria of ¶ 30 ; or

f. a guarantee to fund or perform the Work executed in favor of EPA by a company: (1) that is a direct or indirect parent company of a Settling Defendant or has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with a Settling Defendant; and (2) demonstrates to EPA's satisfaction that it meets the financial test criteria of ¶ 30.

30. Settling Defendants seeking to provide financial assurance by means of a demonstration or guarantee under ¶ 29.e or 29.f must, within 30 days after the Effective Date:

a. demonstrate that:

(1) the affected Settling Defendant or guarantor has:

i. two of the following three ratios: a ratio of total liabilities to net worth less than 2.0; a ratio of the sum of net income plus depreciation, depletion, and amortization to total liabilities greater than 0.1; and a ratio of current assets to current liabilities greater than 1.5; and

ii. net working capital and tangible net worth each at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

iii. tangible net worth of at least $10 million; and

iv. assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; or

(2) the affected Settling Defendant or guarantor has:

i. a current rating for its senior unsecured debt of AAA, AA, A, or BBB as issued by Standard and Poor's or Aaa, Aa, A or Baa as issued by Moody's; and

ii. tangible net worth at least six times the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

iii. tangible net worth of at least $10 million; and

iv. assets located in the United States amounting to at least 90 percent of total assets or at least six times the sum of the Estimated Cost of

the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee; and

b. submit to EPA for the affected Settling Defendant or guarantor: (1) a copy of an independent certified public accountant's report of the entity's financial statements for the latest completed fiscal year, which must not express an adverse opinion or disclaimer of opinion; and (2) a letter from its chief financial officer and a report from an independent certified public accountant substantially identical to the sample letter and reports available from EPA. As of the date of lodging of this Decree, a sample letter and report is available under the "Financial Assurance - Settlements" subject list category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/.

31. Settling Defendants providing financial assurance by means of a demonstration or guarantee under ¶ 29.e or 29.f must also:

a. annually resubmit the documents described in ¶ 30.b within 90 days after the close of the affected Settling Defendant's or guarantor's fiscal year;

b. notify EPA within 30 days after the affected Settling Defendant or guarantor determines that it no longer satisfies the relevant financial test criteria and requirements set forth in this Section; and

c. provide to EPA, within 30 days of EPA's request, reports of the financial condition of the affected Settling Defendant or guarantor in addition to those specified in ¶ 30.b; EPA may make such a request at any time based on a belief that the affected Settling Defendant or guarantor may no longer meet the financial test requirements of this Section.

32. Settling Defendants shall, within 30 days after the Effective Date, seek EPA's approval of the form of Settling Defendants' financial assurance. Within 30 days after such approval, Settling Defendants shall secure all executed or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the Regional Financial Management Officer, to DOJ, and to EPA.

33. Settling Defendants shall diligently monitor the adequacy of the financial assurance. If any Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, such Settling Defendant shall notify EPA of such information within seven days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the affected Settling Defendant of such determination. Settling Defendants shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the affected Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to

exceed 60 days. Settling Defendants shall follow the procedures of ¶ 35 in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendants' inability to secure financial assurance in accordance with this Section does not excuse performance of any other requirement of this Decree.

34. **Access to Financial Assurance**

a. If EPA issues a notice of a Work Takeover under ¶ 25.b, then, in accordance with any applicable financial assurance mechanism, EPA may require that any funds guaranteed be paid in accordance with ¶ 34.d.

b. If EPA is notified that the issuer of a financial assurance mechanism intends to cancel the mechanism, and the affected Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 34.d.

c. If, upon issuance of a notice of a Work Takeover under ¶ 25.b, either: (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism , whether in cash or in kind, to continue and complete the Work; or (2) the financial assurance is a demonstration or guarantee under ¶ 29.e or 29.f, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendants shall, within 30 days after such demand, pay the amount demanded as directed by EPA.

d. Any amounts required to be paid under this ¶ 34 must be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the Fund or into the Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the Fund.

35. **Modification of Amount, Form, or Terms of Financial Assurance**. Beginning after the first anniversary of the Effective Date, and no more than once per calendar year, Settling Defendants may submit a request to change the form, terms, or amount of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 32, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendants of its decision regarding the request. Settling Defendants may initiate dispute resolution under Section XII regarding EPA's decision within 30 days after receipt of the decision. Settling Defendants may modify the form, terms, or amount of the financial assurance mechanism only: (a) in accordance with EPA's approval; or (b) in accordance with any resolution of a dispute under Section XII. Settling Defendants shall submit to EPA, within 30 days after receipt of EPA's approval or consistent with the terms of the resolution of the dispute, documentation of the change to the form, terms, or amount of the financial assurance instrument.

36. **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendants may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA issues a Certification of Work Completion under ¶ 4.9 of the SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XII.

## IX. INDEMNIFICATION AND INSURANCE

37. **Indemnification**

a. Plaintiff does not assume any liability by entering into this Decree or by virtue of any designation of Settling Defendants as EPA's authorized representative under section 104(e)(1) of CERCLA. Settling Defendants shall indemnify and save and hold harmless Plaintiff and its officials, agents, employees, contractors, subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendants' behalf or under their control, in carrying out activities under this Decree, including any claims arising from any designation of Settling Defendants as EPA's authorized representatives under section 104(e)(1) of CERCLA. Further, Settling Defendants agree to pay Plaintiff all costs it incurs including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiff based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control in carrying out activities under with this Decree. Plaintiff may not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities under this Decree. The Settling Defendants and any such contractor may not be considered an agent of Plaintiff.

b. Plaintiff shall give Settling Defendants notice of any claim for which Plaintiff plans to seek indemnification in accordance with this ¶ 37, and shall consult with Settling Defendants prior to settling such claim.

38. Settling Defendants covenant not to sue and shall not assert any claim or cause of action against Plaintiff for damages or reimbursement or for set-off of any payments made or to be made to Plaintiff, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work or other activities on or relating to the Site, including claims on account of construction delays. In addition, Settling Defendants shall indemnify and save and hold Plaintiff harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of work at or relating to the Site, including claims on account of construction delays.

39. **Insurance**. Settling Defendants shall secure, by no later than 15 days before commencing any on-site Work, the following insurance: (a) commercial general liability

insurance with limits of liability of $1 million per occurrence; (b) automobile liability insurance with limits of liability of $1 million per accident; and (c) umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits. The insurance policy must name Plaintiff as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendants under this Decree. Settling Defendants shall maintain this insurance until the first anniversary after the Remedial Action has been performed in accordance with this Decree and the Performance Standards have been achieved. In addition, for the duration of this Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Decree. Prior to commencement of the Work, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendants shall ensure that all submittals to EPA under this Paragraph identify the Madison County Sanitary Landfill Superfund Site, Madison, Florida and the civil action number of this case.

## X. PAYMENTS FOR RESPONSE COSTS

40. **Payments by Settling Defendants for Future Response Costs**

a. **Periodic Bills**. On a periodic basis, EPA will send Settling Defendants a bill for Future Response Costs, including a listing direct and indirect costs paid by EPA, its contractors, subcontractors, and DOJ. Settling Defendants may initiate a dispute under Section XII regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (1) whether EPA has made an arithmetical error; (2) whether EPA has included a cost item that is not within the definition of Future Response Costs; or (3) whether EPA has paid excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendants must specify in the Notice of Dispute the contested costs and the basis for the objection.

b. **Payment of Bill**. Settling Defendants shall pay the bill, or if they initiate dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. Settling Defendants shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (1) the uncontested bill or portion of bill, if late; and (2) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendants shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link and including references to the Site/Spill ID and DJ numbers listed in ¶ 78 and the purpose of the payment. Settling Defendants shall send notices of this payment to DOJ and EPA.

41. **Deposit of Payments**. EPA may, in its unreviewable discretion, deposit the amounts paid under ¶¶ 39., and 40.b in the Fund, in the Special Account, or both. EPA may, in its unreviewable discretion, retain and use any amounts deposited in the Special Account to conduct or finance response actions at or in connection with the Site, or transfer those amounts to the Fund.

## XI. FORCE MAJEURE

42. "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors that delays or prevents the performance of any obligation under this Decree despite Settling Defendants' best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

43. If any event occurs for which Settling Defendants will or may claim a force majeure, Settling Defendants shall notify EPA's Project Coordinator by email. The deadline for the initial notice is 3 days after the date Settling Defendants first knew or should have known that the event would likely delay performance. Settling Defendants shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Settling Defendants knew or should have known. Within 2 days thereafter, Settling Defendants shall send a further notice to EPA that includes: (i) a description of the event and its effect on Settling Defendants' completion of the requirements of the Decree; (ii) a description of all actions taken or to be taken to prevent or minimize the adverse effects or delay; (iii) the proposed extension of time for Settling Defendants to complete the requirements of the Decree; (iv) a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (v) all available proof supporting their claim of force majeure. Failure to comply with the notice requirements herein regarding an event precludes Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 42 and whether Settling Defendants have exercised their best efforts under ¶ 42, EPA may, in its unreviewable discretion, excuse in writing Settling Defendants' failure to submit timely or complete notices under this Paragraph.

44. EPA will notify Settling Defendants of its determination whether Settling Defendants are entitled to relief under ¶ 42, and, if so, the duration of the extension of time for performance of the obligations affected by the force majeure. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. Settling Defendants may initiate dispute resolution under Section XII regarding EPA's determination within 15 days after receipt of the determination. In any such proceeding, Settling Defendants have the burden of proving that they

are entitled to relief under ¶ 42 and that their proposed extension was or will be warranted under the circumstances.

45. The failure by EPA to timely complete any activity under the Decree or the SOW is not a violation of the Decree, provided, however, that if such failure prevents Settling Defendants from timely completing a requirement of the Decree, Settling Defendants may seek relief under this Section.

## XII. DISPUTE RESOLUTION

46. Unless otherwise provided in this Decree, Settling Defendants must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendants shall not initiate a dispute challenging the Record of Decision. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

47. A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute"). Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by EPA is binding unless Settling Defendants initiate formal dispute resolution under ¶ 48.

48. **Formal Dispute Resolution**

a. **Statements of Position**. Settling Defendants may initiate formal dispute resolution by serving on the Plaintiff, within 20 days after the conclusion of informal dispute resolution under ¶ 47, an initial Statement of Position regarding the matter in dispute. The Plaintiff's responsive Statement of Position is due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 days after receipt of the response. If appropriate, EPA may extend the deadlines for filing statements of position for up to 45 days and may allow the submission of supplemental statements of position.

b. **Formal Decision**. The Director of the Superfund & Emergency Management Division, EPA Region 4, will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendants unless they timely seek judicial review under ¶ 49.

c. **Compilation of Administrative Record**. EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

49. **Judicial Review**

a. Settling Defendants may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b. **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a Work Takeover is warranted under ¶ 25; (iv) determinations about financial assurance under Section VIII; (v) whether a reopener condition under ¶ 60 is satisfied, including whether the Remedial Action is not protective of human health and the environment; (vi) EPA's selection of modified or further response actions; (vii) any other items requiring EPA approval under the Decree; and (viii) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendants bear the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c. Judicial review of any dispute not governed by ¶ 49.b shall be governed by applicable principles of law.

50. **Escrow Account**. For disputes regarding a Future Response Cost billing, Settling Defendants shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"); (b) remit to that escrow account funds equal to the amount of the contested Future Response Costs; and (c) send to EPA copies of the correspondence and of the payment documentation (e.g., the check) that established and funded the escrow account, including the name of the bank, the bank account number, and a bank statement showing the initial balance in the account. EPA may, in its unreviewable discretion, waive the requirement to establish the escrow account. Settling Defendants shall cause the escrow agent to pay the amounts due to EPA under ¶ 40, if any, by the deadline for such payment in ¶ 40. Settling Defendants are responsible for any balance due under ¶ 40 after the payment by the escrow agent.

51. The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as EPA agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 54.

## XIII. STIPULATED PENALTIES

52. Unless the noncompliance is excused under Section XI (Force Majeure), Settling Defendants are liable to the United States for the following stipulated penalties:

a. for any failure: (i) to pay any amount due under Section X; (ii) to establish and maintain financial assurance in accordance with Section VIII; or (iii) to submit timely or adequate deliverables under Section 6 of the SOW; :

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $500.00 |
| 15th through 30th day | $1,500.00 |
| 31st day and beyond | $5,000.00 |

b. for any failure to submit timely or adequate deliverables required by this Decree other than those specified in ¶ 52.a:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $300.00 |
| 15th through 30th day | $900.00 |
| 31st day and beyond | $3,000.00 |

53. **Work Takeover Penalty**. If EPA commences a Work Takeover, Settling Defendants are liable for a stipulated penalty in the amount of $500,000.00. This stipulated penalty is in addition to the remedy available to EPA under ¶ 34 (Access to Financial Assurance) to fund the performance of the Work by EPA.

54. **Accrual of Penalties**. Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether Settling Defendants have been notified of their noncompliance, and regardless of whether Settling Defendants have initiated dispute resolution under Section XII, provided, however, that no penalties will accrue as follows:

a. with respect to a submission that EPA subsequently determines is deficient under ¶ 6.6 of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency;

b. with respect to a matter that is the subject of dispute resolution under Section XII, during the period, if any, beginning on the 21st day after the later of the date that EPA's Statement of Position is received or the date that Settling Defendants' reply thereto (if any) is received until the date of the Formal Decision under ¶ 48.b; or

c. with respect to a matter that is the subject of judicial review by the Court under ¶ 49, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

55. **Demand and Payment of Stipulated Penalties**. EPA may send Settling Defendants a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendants may initiate dispute resolution under Section XII within 30 days after receipt of the demand. Settling Defendants shall pay the amount demanded or, if they initiate dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Settling Defendants shall pay the contested portion of the penalties determined to be owed, if

any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendants shall make payment at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID and DJ numbers listed in ¶ 78, and the purpose of the payment. Settling Defendants shall send a notice of this payment to DOJ and EPA. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendants under the Decree.

56. Nothing in this Decree limits the authority of the United States: (a) to seek any remedy otherwise provided by law for Settling Defendants' failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Settling Defendants' noncompliances with this Decree or of the statutes and regulations upon which it is based, including penalties under section 122(*l*) of CERCLA, provided, however, that the United States may not seek civil penalties under section 122(*l*) of CERCLA for any noncompliance for which a stipulated penalty is provided for in this Decree, except in the case of a willful noncompliance with this Decree.

57. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XIV. COVENANTS BY PLAINTIFF

58. **Covenants for Settling Defendant**s. Subject to ¶¶ 60 and 61, the United States covenants not to sue or to take administrative action against Settling Defendants under sections 106 and 107(a) of CERCLA regarding the Site.

59. The covenants under ¶ 58: (a) take effect upon the Effective Date, except with respect to future liability, for which these covenants take effect upon Certification of Remedial Action Completion by EPA under ¶ 4.6 of the SOW; (b) are conditioned on the satisfactory performance by Settling Defendants of the requirements of this Decree; (c) extend to the successors of each Settling Defendant but only to the extent that the alleged liability of the successor of the Settling Defendant is based solely on its status as a successor of the Settling Defendant; and (d) do not extend to any other person.

60. **United States' Pre- and Post-certification Reservations**

a. Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, the right to issue an administrative order or to institute proceedings in this action or in a new action seeking to compel Settling Defendants to perform further response actions relating to the Site, to pay the United States for additional costs of response, or any combination thereof. The United States may exercise this reservation only if, at any time, conditions at the Site previously unknown to EPA are discovered, or information previously unknown to EPA is received, and EPA determines, based in whole or in part on these

previously unknown conditions or information, that the Remedial Action is not protective of human health or the environment.

b. Before certification of Remedial Action Completion, the information and the conditions known to EPA include only that information and those conditions known to EPA as of the date the Amended Record of Decision was signed and set forth in the Amended Record of Decision for the Site and the administrative record supporting the Amended Record of Decision.

c. After certification of Remedial Action Completion, the information and the conditions known to EPA include only that information and those conditions known to EPA as of the date of Certification of Remedial Action Completion and set forth in the Amended Record of Decision, the administrative record supporting the Amended Record of Decision, the post-Record of Decision administrative record, or in any information received by EPA in accordance with the requirements of this Decree prior to Certification of Remedial Action Completion.

61. **General Reservations**. Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, all rights against Settling Defendants regarding the following:

a. liability for failure by Settling Defendants to meet a requirement of this Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on Settling Defendants' ownership of the Site when such ownership commences after Settling Defendants' signature of this Decree;

d. liability based on Settling Defendants' operation of the Site when such operation commences after Settling Defendants' signature of this Decree and does not arise solely from Settling Defendants' performance of the Work;

e. liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, after signature of this Decree by Settling Defendants, other than as provided in the Record of Decision, under this Decree, or ordered by EPA;

f. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments; and

g. liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, but that are not covered by ¶ 23.b; and

h. criminal liability.

62. Subject to ¶ 58, nothing in this Decree limits any authority of Plaintiff to take, direct, or order all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or to request a Court to order such action.

## XV. COVENANTS BY SETTLING DEFENDANTS

63. **Covenants by Settling Defendants**

a. Subject to ¶ 64, Settling Defendants covenant not to sue and shall not assert any claim or cause of action against the United States under CERCLA, section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, State law, or at common law regarding the Site.

b. Subject to ¶ 64, Settling Defendants covenant not to seek reimbursement from the Fund through CERCLA or any other law for costs regarding the Site.

64. **Settling Defendants' Reservation**. The covenants in ¶ 63 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States to the extent such claim, cause of action, or order is within the scope of a reservation under ¶ 60, and ¶¶ 61.a through 61.g.

65. **MSW Waiver**

a. "Municipal Solid Waste" or "MSW" means waste material: (1) generated by a household (including a single or multifamily residence); or (2) generated by a commercial, industrial, or institutional entity, to the extent that the waste material (i) is essentially the same as waste normally generated by a household; (ii) is collected and disposed of with other municipal solid waste as part of normal municipal solid waste collection services; and (iii) contains a relative quantity of hazardous substances no greater than the relative quantity of hazardous substances contained in waste material generated by a typical single-family household.

b. Settling Defendants shall not assert any claims and waive all claims or causes of action (including claims or causes of action under sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of MSW at the Site, if the volume of MSW disposed, treated, or transported by such person to the Site did not exceed 0.2% of the total volume of waste at the Site. This waiver does not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the materials containing MSW contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued under sections 104(e) or 122(e)(3)(B) of CERCLA or section 3007 of RCRA, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site. This waiver does not apply with respect to any defense, claim, or cause of action that a Settling

Defendant may have against any person otherwise covered by this waiver if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XVI. EFFECT OF SETTLEMENT; CONTRIBUTION

66. The Parties agree and the Court finds that: (a) the complaint filed by the United States in this action is a civil action within the meaning of section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which each Settling Defendant has, as of the Effective Date, resolved its liability to the United States within the meaning of sections 113(f)(2) and 113(f)(3)(B) of CERCLA; and (c) each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Decree. The "matters addressed" in this Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State, provided, however, that if the United States exercises rights under the reservations in ¶ 60 and ¶¶ 61.a through 61.g, the "matters addressed" in this Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

67. Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify DOJ and EPA no later than 60 days prior to the initiation of such suit or claim. Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify DOJ and EPA within 10 days after service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify DOJ and EPA within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

68. **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against any Settling Defendant by Plaintiff for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

69. Nothing in this Decree diminishes the right of the United States under section 113(f)(2) and (3) of CERCLA to pursue any person not a party to this Decree to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2).

70. Upon the Effective Date of this CD, the UAO is terminated.

## XVII. RECORDS

71. **Settling Defendant Certification**. Each Settling Defendant certifies individually that: (a) it has implemented a litigation hold on documents and electronically stored information relating to the Site, including information relating to its potential liability under CERCLA regarding the Site, since the earlier of notification of potential liability by the United States or the

State or the filing of suit against it regarding the Site; and (b) it has fully complied with any and all EPA requests for information under sections 104(e) and 122(e) of CERCLA, and section 3007 of RCRA.

72. **Retention of Records and Information**

a. Settling Defendants shall retain, and instruct their contractors and agents to retain, the following documents and electronically stored data ("Records") until 10 years after the Certification Completion of the Work under SOW ¶ 4.9 (the "Record Retention Period"):

(1) All records regarding Settling Defendants' liability under CERCLA regarding the Site;

(2) All reports, plans, permits, and documents submitted to EPA in accordance with this Decree, including all underlying research and data; and

(3) All data developed by, or on behalf of, Settling Defendants in the course of performing the Remedial Action.

b. Madison County shall retain all Records regarding the liability of any person under CERCLA regarding the Site during the Record Retention Period.

c. At the end of the Record Retention Period, Settling Defendants shall notify EPA that it has 90 days to request the Settling Defendants' Records subject to this Section. Settling Defendants shall retain and preserve their Records subject to this Section until 90 days after EPA's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

73. Settling Defendants shall provide to EPA, upon request, copies of all Records and information required to be retained under this Section. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

74. **Privileged and Protected Claims**

a. Settling Defendants may assert that all or part of a record requested by Plaintiff is privileged or protected as provided under federal law, in lieu of providing the record, provided that Settling Defendants comply with ¶ 74.b, and except as provided in ¶ 74.c.

b. If Settling Defendants assert a claim of privilege or protection, they shall provide Plaintiff with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendants shall provide the record to Plaintiff in redacted form to mask the privileged or protected portion only. Settling Defendants shall retain all records that they claim to be privileged or protected

until Plaintiff has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendants' favor.

c. Settling Defendants shall not make any claim of privilege or protection regarding: (1) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (2) the portion of any record that Settling Defendants are required to create or generate in accordance with this Decree.

75. **Confidential Business Information (CBI) Claims**. Settling Defendants may claim that all or part of a record provided to Plaintiff under this Section is CBI to the extent permitted by and in accordance with section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b). Settling Defendants shall segregate and shall clearly identify all records or parts thereof submitted under this Decree for which they claim is CBI by labeling each page or each electronic file "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendants claim to be CBI will be afforded the protection specified in 40 C.F.R. part 2, subpart B. If no CBI claim accompanies records when they are submitted to EPA, or if EPA notifies Settling Defendants that the records are not entitled to confidential treatment under the standards of section 104(e)(7) of CERCLA or 40 C.F.R. part 2, subpart B, the public may be given access to such records without further notice to Settling Defendants.

76. In any proceeding under this Decree, validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA, if relevant to the proceeding, is admissible as evidence, without objection.

77. Notwithstanding any provision of this Decree, Plaintiff retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XVIII. NOTICES AND SUBMISSIONS

78. All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

As to DOJ: *via email to*:
eescdcopy.enrd@usdoj.gov
Re: DJ # 90-11-3-1053/2

As to EPA: *via email to*:

Caroline Y. Freeman, Director
Superfund & Emergency Management Division
U.S. EPA Region 4
Atlanta, Georgia
freeman.caroline@epa.gov

and

Ahmad Hassanein, Remedial Project Manager
Superfund & Emergency Management Division
U.S. EPA Region 4
Atlanta, Georgia
hassanein.ahmad@epa.gov

Re: Site/Spill ID # 048B

*via email to*:

Paula Painter
Program Analyst
Superfund & Emergency Management Division
U.S. EPA Region 4
Atlanta, Georgia
painter.paula@epa.gov

Re: Site/Spill ID # 048B

| | |
|---|---|
| As to Settling Defendants: | *via email to*:<br>For ITT:<br><br>Tammy Onorato, P.E.<br>Montrose Environmental<br>taonorato@montrose-env.com<br><br>with a copy to:<br><br>Gary K. Hunter, Jr., Esq.<br>Holtzman Vogel, P.A.<br>119 S. Monroe Street, Suite 500<br>Tallahassee, FL 32312<br>ghunter@holtzmanvogel.com<br><br>and to:<br><br>Jeffrey Stanek<br>ITT<br>Jeffrey.stanek@itt.com |

## XIX. APPENDIXES

79. The following appendixes are attached to and incorporated into this Decree:

"Appendix A" is the Record of Decision.

"Appendix B" is the Amended Record of Decision.

"Appendix C" is the SOW.

"Appendix D" is the map of the Site.

"Appendix E" is the complete list of Settling Defendants.

## XX. MODIFICATIONS TO DECREE

80. Except as provided in ¶ 23 of the Decree and ¶ 6.6 of the SOW (Approval of Deliverables), nonmaterial modifications to Sections I through XXIV and the Appendixes must be in writing and are effective when signed (including electronically signed) by the Parties. Material modifications to Sections I through XXIV and the Appendixes must be in writing, signed (which may include electronically signed) by the Parties, and are effective upon approval by the Court. As to changes to the remedy, a modification to the Decree, including the SOW, to implement an amendment to the Record of Decision that "fundamentally alters the basic

features" of the Remedial Action within the meaning of 40 C.F.R. § 300.435(c)(2)(ii) will be considered a material modification.

## XXI. SIGNATORIES

81. The undersigned representative of the United States and each undersigned representative of a Settling Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XXII. PRE-ENTRY PROVISIONS

82. If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶ 83 and ¶ 84, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

83. This Decree will be lodged with the Court for at least 30 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate.

84. Settling Defendants agree not oppose or appeal the entry of this Decree.

## XXIII. INTEGRATION

85. This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXIV. FINAL JUDGMENT

86. Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 among the Parties.

SO **ORDERED** this ___ day of ___________, 20__.

____________________________________

United States District Judge

Signature Page for Consent Decree in *U.S. v. City of Madison, Florida, et al.* (N.D. Fla.)

**FOR THE UNITED STATES:**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Energy and Natural Resources Division

11/13/2026
Dated

/s/ Rachael Amy Kamons

RACHAEL AMY KAMONS
Senior Counsel
U.S. Department of Justice
Energy and Natural Resources Division
Environmental Enforcement Section
150 M Street N.E.
Washington D.C. 20002
202-598-9739
Rachael.Kamons@usdoj.gov

Signature Page for Consent Decree in *U.S. v. City of Madison, Florida et al.* (N.D. Fla.)

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

CAROLINE FREEMAN Digitally signed by CAROLINE FREEMAN Date: 2024.10.25 19:13:33 -04'00'

Caroline Y. Freeman
Director
Superfund & Emergency Management Division
U.S. Environmental Protection Agency
Region 4

CRYSTAL RUTLAND Digitally signed by CRYSTAL RUTLAND Date: 2024.10.23 09:55:56 -04'00'

C. Jade Rutland
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, SW
Atlanta, GA 30303

Signature Page for Consent Decree in *U.S. v. City of Madison, Florida et al.* (N.D. Fla.)

**FOR**: CITY COMMISSION OF THE CITY OF MADISON, FLOIDA

8-13-2024
Dated

Name: Judy Townsend
Title: Mayor
Address: 321 SW Rutledge Street, Madison, FL 32340

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name: George T. Reeves
Title: Assistant City Attorney
Company: Davis, Schnitker, Reeves & Browning, P.A.
Address: P.O. Drawer 652
Madison, FL 32341
Phone: (850) 973-4186
email: tomreeves@earthlink.net

Signature Page for Consent Decree in *U.S. v. City of Madison, Florida et al.* (N.D. Fla.)

**FOR ITT LLC:**

8/12/2024
Dated

Name: Jeff Stanek
Title: Director, Environmental Affairs
Address: 56 Technology Drive, Irvine, CA 92618

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name: Gary Hunter
Title: Partner
Company: Holtzman Vogel
Address: 119 S. Monroe Street, Ste 500
Tallahassee, FL 32301
Phone: (850) 391-0509
email: GHunter@HoltzmanVogel.com

Signature Page for Consent Decree in *U.S. v. City of Madison, Florida et al.* (N.D. Fla.)

**FOR**: BOARD OF COUNTY COMMISSIONERS, MADISON COUNTY, FLOIDA

8/14/24
Dated

Name: H. Alston Kelley
Title: Chair
Address: PO Box 539, Madison, FL 32341

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name: George T. Reeves
Title: County Attorney
Company: Davis, Schnitker, Reeves & Browning, P.A.
Address: P.O. Drawer 652
Madison, FL 32341
Phone: (850) 973-4186
email: tomreeves@earthlink.net