United States of America v. City of Madison, Florida;
Madison County, Florida; and ITT LLC

Proposed Consent Decree

Appendix C: Statement of Work

# STATEMENT OF WORK

## MADISON COUNTY SANITARY LANDFILL SUPERFUND SITE

**Madison, Madison County, State of Florida**

**U.S. EPA Region 4**

# TABLE OF CONTENTS


1. INTRODUCTION ..... 3
2. COMMUNITY INVOLVEMENT ..... 3
3. COORDINATION AND SUPERVISION ..... 5
4. REMEDIAL ACTION ..... 6
5. REPORTING ..... 11
6. DELIVERABLES ..... 12
7. SCHEDULES ..... 19
8. STATE PARTICIPATION ..... 20
9. REFERENCES ..... 20

# 1. INTRODUCTION

**1.1 Purpose of SOW**. This SOW sets forth the procedures and requirements for implementing the Work.

**1.2 Structure of the SOW**

- Section 2 (Community Involvement) sets forth EPA's and Settling Defendants' responsibilities for community involvement.
- Section 3 (Coordination and Supervision) contains the provisions for selecting the Supervising Contractor and Project Coordinators regarding the Work.
- Section 5 (Remedial Action) sets forth requirements regarding the completion of the Remedial Action, including primary deliverables related to completion of the Remedial Action.
- Section 6 (Contingency Remedy) sets forth Settling Defendants' obligations regarding implementation of contingency remedies.
- Section 7 (Reporting) sets forth Settling Defendants' reporting obligations.
- Section 8 (Deliverables) describes the contents of the supporting deliverables and the general requirements regarding Settling Defendants' submission of, and EPA's review of, approval of, comment on, and/or modification of, the deliverables.
- Section 9 (Schedules) sets forth the schedule for submitting the primary deliverables, specifies the supporting deliverables that must accompany each primary deliverable, and sets forth the schedule of milestones regarding the completion of the Remedial Action.
- Section 9.4 (State Participation) addresses State participation.
- Section 11 (References) provides a list of references, including URLs.

**1.3** The Scope of the Remedy includes the actions described in Section 9 of the Record of Decision and Section 6 of the Amended Record of Decision, including installation of a clay/soil cap, installation of groundwater treatment system, and institutional controls.

**1.4** The terms used in this SOW that are defined in CERCLA, in regulations promulgated under CERCLA, or in the Consent Decree ("Decree"), have the meanings assigned to them in CERCLA, in such regulations, or in the Decree, except that the term "Paragraph" or "¶" means a paragraph of the SOW, and the term "Section" means a section of the SOW, unless otherwise stated.

# 2. COMMUNITY INVOLVEMENT

**2.1** As requested by EPA, Settling Defendants shall conduct community involvement activities under EPA's oversight as provided for in, and in accordance with this Section. Such activities must include designation of a Community Involvement Coordinator ("CI Coordinator").

**2.2 Community Involvement Responsibilities**

(a) EPA has the lead responsibility for developing and implementing community involvement activities at the Site. Previously during the Remedial Investigation and Feasibility Study ("RI/FS") phase, EPA developed a Community Involvement Plan ("CIP") for the Site. In accordance with 40 C.F.R. § 300.435(c), EPA shall review the existing CIP and determine whether it should be revised to describe further public involvement activities during the Work that are not already addressed or provided for in the existing CIP.

(b) **Settling Defendants' CI Coordinator**. As requested by EPA, Settling Defendants shall, within 10 days, designate and notify EPA of Settling Defendants' CI Coordinator (Settling Defendants' CI Coordinator). Settling Defendants may hire a contractor for this purpose. Settling Defendants' notice must include the name, title, and qualifications of the Settling Defendants' CI Coordinator. Settling Defendants' CI Coordinator shall coordinate his/her activities with EPA's CI Coordinator, provide support regarding EPA's community involvement activities, and, as requested by EPA's CI Coordinator, provide draft responses to the public's inquiries including requests for information or data about the Site. The Settling Defendants' CI Coordinator has the responsibility to ensure that when they communicate with the public, the Settling Defendants protect any "Personally Identifiable Information" ("PII") (*e.g.* sample results from residential properties) in accordance with "EPA Policy 2151.0: Privacy Policy."

(c) As requested by EPA, Settling Defendants shall participate in community involvement activities, including participation in: public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site (with interpreters present for community members with limited English proficiency. Settling Defendants' support of EPA's community involvement activities may include providing online access to initial submissions and updates of deliverables to: (1) any Community Advisory Groups, (2) any Technical Assistance Grant ("TAG") recipients and their advisors, and (3) other entities to provide them with a reasonable opportunity for review and comment. EPA may describe in its CIP Settling Defendants' responsibilities for community involvement activities. All community involvement activities conducted by Settling Defendants at EPA's request are subject to EPA's oversight. Upon EPA's request, Settling Defendants shall establish, as early as is feasible, a community information repository at or near the Site, as provided in the CIP, to house one copy of the administrative record.

(d) **Information for the Community**. As requested by EPA, Settling Defendants shall develop and provide to EPA information about the design and implementation of the remedy including: (1) any validated data from monitoring of impacts to communities as provided in the Community Impacts Mitigation Plan under ¶ 8.7(f); (2) results from unvalidated sampling as provided under ¶ 8.7(e)(7); (3) a copy of the Community Impacts Mitigation Plan required under

¶ 8.7(f); (4) schedules prepared under Section 9; (5) dates that Settling Defendants completed each task listed in the schedules; and (6) digital photographs of the Work being performed, together with descriptions of the Work depicted in each photograph, the purpose of the Work, the equipment being used, and the location of the Work. The EPA Project Coordinator may use this information for communication to the public via EPA's website, social media, or local and mass media. The information provided to EPA should be suitable for sharing with the public and the education levels of the community as indicated in EJ Screen. Translations should be in the dominant language(s) of community members with limited English proficiency.

## 3. COORDINATION AND SUPERVISION

### 3.1 Project Coordinators

(a) Settling Defendants' Project Coordinator must have sufficient technical expertise to coordinate the Work. Settling Defendants' Project Coordinator may not be an attorney representing any Settling Defendant in this matter and may not act as the Supervising Contractor. Settling Defendants' Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(b) EPA shall designate and notify the Settling Defendants of EPA's Project Coordinator(s) and Alternate Project Coordinator(s). EPA may designate other representatives, which may include its employees, contractors, and/or consultants, to oversee the Work. EPA's Project Coordinator/Alternate Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"). This includes the authority to halt the Work and/or to conduct or direct any necessary response action when it is determined that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to a release or threatened release of Waste Material.

(c) Settling Defendants' Project Coordinators shall communicate with EPA's Project Coordinator at least monthly.

**3.2 Supervising Contractor**. Settling Defendants' proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with the most recent version of *Quality Systems for Environmental Data and Technology Programs -- Requirements with Guidance for Use* (American National Standard), ANSI/ASQC E4 (Feb. 2014).

### 3.3 Procedures for Disapproval/Notice to Proceed

(a) Settling Defendants shall designate, and notify EPA, within 10 days after the Effective Date, of the name[s], title[s], contact information, and qualifications of the Settling Defendants' proposed Project Coordinator and Supervising

Contractor, whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (*e.g*., experience, capacity, technical expertise) and do not have a conflict of interest with respect to the project.

(b) EPA shall issue notices of disapproval and/or authorizations to proceed regarding any proposed Project Coordinator and Supervising Contractor, as applicable. If EPA issues a notice of disapproval, Settling Defendants shall, within 15 days, submit to EPA a list of supplemental proposed Project Coordinators and/or Supervising Contractors, as applicable, including a description of the qualifications of each. Settling Defendants may select any coordinator/contractor covered by an authorization to proceed and shall, within 15 days, notify EPA of Settling Defendants' selection.

(c) EPA may disapprove the proposed Project Coordinator, the Supervising Contractor, or both, based on objective assessment criteria (*e.g*., experience, capacity, technical expertise), if they have a conflict of interest regarding the project, or any combination of these factors.

(d) Settling Defendants may change their Project Coordinator and/or Supervising Contractor, or both, by following the procedures of ¶¶ 3.3(a) and 3.3(b).

(e) Notwithstanding the procedures of ¶¶ 3.3(a) through 3.3(d), Settling Defendants have proposed, and EPA has authorized Settling Defendants to proceed, regarding the following Project Coordinator and Supervising Contractor: [**name and contact information**].

## 4. REMEDIAL ACTION

**4.1 Remedial Action Work Plan ("RAWP")**. Settling Defendants shall submit a RAWP for EPA approval that includes:

(a) A proposed Remedial Action Construction Schedule in a Gantt chart;

(b) An updated health and safety plan that covers activities during the Remedial Action; and

(c) Plans for satisfying any permitting requirements, including obtaining permits for off-site activity and for satisfying substantive requirements of permits for on-site activity.

**4.2 Meetings and Inspections**

(a) **Preconstruction Conference**. Settling Defendants shall hold a preconstruction conference with EPA and others as directed or approved by EPA and as described in the *Remedial Design/Remedial Action Handbook*, EPA 540/R-95/059 (June 1995). Settling Defendants shall prepare minutes of the conference and shall distribute the minutes to all Parties.

(b) **Periodic Communications**. During the construction portion of the Remedial Action (Remedial Action Construction), Settling Defendants shall communicate regularly **monthly** with EPA, and others as directed or determined by EPA, to discuss construction issues. Settling Defendants shall distribute an agenda and list of attendees to all Parties prior to each meeting or telephone call. Settling Defendants shall prepare minutes of the meetings or calls and shall distribute the minutes to all Parties.

(c) **Inspections**

(1) EPA or its representative shall conduct periodic inspections of or have an on-site presence during the Work. At EPA's request, the Supervising Contractor or other designee shall accompany EPA or its representative during inspections.

(2) Settling Defendants shall provide on-site office space for EPA personnel to perform their oversight duties.

(3) Upon notification by EPA of any deficiencies in the Remedial Action Construction, Settling Defendants shall take all necessary steps to correct the deficiencies and/or bring the Remedial Action Construction into compliance with the approved Final Remedial Design, any approved design changes, and/or the approved RAWP. If applicable, Settling Defendants shall comply with any schedule provided by EPA in its notice of deficiency.

**4.3 Permits**

(a) As provided in CERCLA § 121(e), and Section 300.400(e) of the NCP, no permit is required for any portion of the Work conducted entirely on-site *(i.e.*, within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

(b) Settling Defendants may seek relief under the provisions of Section XI (Force Majeure) of the Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in ¶ 5.4(a) and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

(c) Nothing in the Decree or this SOW constitutes a permit issued under any federal or state statute or regulation.

### 4.4 Emergency Response and Reporting

(a) **Emergency Action**. If any event occurs during performance of the Work that causes or threatens to cause a release of Waste Material on, at, or from the Site and that either constitutes an emergency situation or that may present an immediate threat to public health or welfare or the environment, Settling Defendants shall: (1) immediately take all appropriate action to prevent, abate, or minimize such release or threat of release; (2) immediately notify the authorized EPA officer (as specified in ¶ 5.5(c)) orally; and (3) take such actions in consultation with the authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plan, the Emergency Response Plan, and any other deliverable approved by EPA under the SOW.

(b) **Release Reporting**. Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report under CERCLA § 103 or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Defendants shall immediately notify the authorized EPA officer orally.

(c) The "authorized EPA officer" for purposes of immediate oral notifications and consultations under ¶ 5.5(a) and ¶ 5.5(b) is the EPA Project Coordinator, the EPA Alternate Project Coordinator (if the EPA Project Coordinator is unavailable), or the EPA Region 4 spill reporting hotline, available 24 hours per day, at (404) 562-8700, and the National Call Response Center (if neither EPA Project Coordinator is available).

(d) For any event covered by ¶ 5.5(a) and ¶ 5.5(b), Settling Defendants shall: (1) within 14 days after the onset of such event, submit a report to EPA describing the actions or events that occurred and the measures taken, and to be taken, in response thereto; and (2) within 30 days after the conclusion of such event, submit a report to EPA describing all actions taken in response to such event.

(e) The reporting requirements under ¶ 5.5 are in addition to the reporting required by CERCLA § 103 or EPCRA § 304.

### 4.5 Off-Site Shipments

(a) Settling Defendants may ship hazardous substances, pollutants, and contaminants from the Site to an off-Site facility only if they comply with CERCLA § 121(d)(3), and 40 C.F.R. § 300.440. Settling Defendants will be deemed to be in compliance with CERCLA § 121(d)(3) and 40 C.F.R. § 300.440 regarding a shipment if Settling Defendants obtain a prior determination from EPA that the proposed receiving facility for such shipment is acceptable under the criteria of 40 C.F.R. § 300.440(b).

(b) Settling Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide notice to the appropriate state environmental official in the receiving facility's state and to

the EPA Project Coordinator. This notice requirement will not apply to any off-Site shipments when the total quantity of all such shipments does not exceed 10 cubic yards. The notice must include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Defendants shall provide the notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

(c) Settling Defendants may ship Investigation Derived Waste (IDW) from the Site to an off-Site facility only if they comply with CERCLA § 121(d)(3), 40 C.F.R. § 300.440, *EPA's Guide to Management of Investigation Derived Waste*, OSWER 9345.3-03FS (Jan. 1992), and any IDW-specific requirements contained in the Record of Decision. Wastes shipped off-Site to a laboratory for characterization, and RCRA hazardous wastes that meet the requirements for an exemption from RCRA under 40 CFR § 261.4(e) shipped off-site for treatability studies, are not subject to 40 C.F.R. § 300.440.

**4.6 Remedial Action Construction Completion**

(a) For purposes of this ¶ 5.7, "Remedial Action Construction" comprises, for any Remedial Action that involves the construction and operation of a system to achieve Performance Standards (for example, groundwater or surface water restoration remedies), the construction of such system and the performance of all activities necessary for the system to function properly and as designed.

(b) **Inspection of Constructed Remedy**. Settling Defendants shall schedule an inspection to review the construction and operation of the system and to review whether the system is functioning properly and as designed. The inspection must be attended by Settling Defendants and EPA and/or their representatives. A reinspection must be conducted if requested by EPA.

(c) **Shakedown Period**. There shall be a shakedown period of up to one year for EPA to review whether the remedy is functioning properly and performing as designed. Settling Defendants shall provide such information as EPA requests for such review.

(d) **Remedial Action Report**. Following the shakedown period, Settling Defendants shall submit an "Remedial Action Report" requesting EPA's determination that Remedial Action Construction has been completed. The Remedial Action Report must: (1) include statements by a registered professional engineer and by Settling Defendants' Project Coordinator that the construction of the system is complete and that the system is functioning properly and as designed; (2) include a demonstration, and supporting documentation, that construction of the system is

complete and that the system is functioning properly and as designed; (3) include as-built drawings signed and stamped by a registered professional engineer; (4) be prepared in accordance with Chapter 2 (Remedial Action Completion) of EPA's *Close Out Procedures for NPL Sites* guidance (May 2011), as supplemented by *Guidance for Management of Superfund Remedies in Post Construction*, OLEM 9200.3-105 (Feb. 2017); and (5) be certified in accordance with ¶ 8.5 (Certification).

(e) If EPA determines that Remedial Action Construction is not complete, EPA shall so notify Settling Defendants. EPA's notice must include a description of, and schedule for, the activities that Settling Defendants must perform to complete Remedial Action Construction. EPA's notice may include a schedule for completion of such activities or may require Settling Defendants to submit a proposed schedule for EPA approval. Settling Defendants shall perform all activities described in the EPA notice in accordance with the schedule.

(f) If EPA determines, based on the initial or any subsequent Remedial Action Report, that Remedial Action Construction is complete, EPA shall so notify Settling Defendants.

**4.7 Certification of Remedial Action Completion**

(a) **Monitoring Report**. Settling Defendants shall submit a Monitoring Report to EPA requesting EPA's Certification of Remedial Action Completion. The report must: (1) include certifications by a registered professional engineer and by Settling Defendants' Project Coordinator that the Remedial Action is complete; (2) be prepared in accordance with Chapter 2 (Remedial Action Completion) of EPA's *Close Out Procedures for NPL Sites* guidance (May 2011), as supplemented by *Guidance for Management of Superfund Remedies in Post Construction*, OLEM 9200.3-105 (Feb. 2017); (3) contain monitoring data to demonstrate that Performance Standards have been achieved; and (4) be certified in accordance with ¶ 8.5 (Certification).

(b) If EPA concludes that the Remedial Action is not Complete, EPA shall so notify Settling Defendants. EPA's notice must include a description of any deficiencies. EPA's notice may include a schedule for addressing such deficiencies or may require Settling Defendants to submit a schedule for EPA approval. Settling Defendants shall perform all activities described in the notice in accordance with the schedule.

(c) If EPA concludes, based on the initial or any subsequent Monitoring Report requesting Certification of Remedial Action Completion, that the Remedial Action is Complete, EPA shall so certify to Settling Defendants. This certification will constitute the Certification of Remedial Action Completion for purposes of the Decree, including Section XIV of the Decree (Covenants by Plaintiff). Certification of Remedial Action Completion will not affect Settling Defendants' remaining obligations under the Decree.

**4.8 Periodic Review Support Plan ("PRSP")**. Settling Defendants shall submit the PRSP for EPA approval. The PRSP addresses the studies and investigations that Settling Defendants shall conduct to support EPA's reviews of whether the Remedial Action is protective of human health and the environment in accordance with CERCLA § 121(c) (also known as "Five-Year Reviews"). Settling Defendants shall develop the plan in accordance with *Comprehensive Five-year Review Guidance*, OSWER 9355.7-03B-P (June 2001), and any other relevant five-year review guidances.

**4.9 Certification of Work Completion**

(a) **Work Completion Inspection**. Settling Defendants shall schedule an inspection for the purpose of obtaining EPA's Certification of Work Completion. The inspection must be attended by Settling Defendants and EPA and/or their representatives.

(b) **Work Completion Report**. Following the inspection, Settling Defendants shall submit a report to EPA requesting EPA's Certification of Work Completion. The report must: (1) include certifications by a registered professional engineer and by Settling Defendants' Project Coordinator that the Work, including all O&M activities, is complete; and (2) be certified in accordance with ¶ 8.5 (Certification). If the Monitoring Report submitted under ¶ 5.8(b) includes all elements required under this ¶ 5.10(b), then the Monitoring Report suffices to satisfy all requirements under this ¶ 5.10(b).

(c) If EPA concludes that the Work is not complete, EPA shall so notify Settling Defendants. EPA's notice must include a description of the activities that Settling Defendants must perform to complete the Work. EPA's notice must include specifications and a schedule for such activities or must require Settling Defendants to submit specifications and a schedule for EPA approval. Settling Defendants shall perform all activities described in the notice or in the EPA-approved specifications and schedule.

(d) If EPA concludes, based on the initial or any subsequent report requesting Certification of Work Completion, that the Work is complete, EPA shall so certify in writing to Settling Defendants. Issuance of the Certification of Work Completion does not affect the following continuing obligations: (1) activities under the Periodic Review Support Plan; (2) obligations under Sections VII (Property Requirements), and XVII (Records) of the Decree; (3) Institutional Controls obligations; and (4) reimbursement of EPA's Future Response Costs under Section X (Payments for Response Costs) of the Decree.

## 5. REPORTING

**5.1 Progress Reports**. Commencing with the month following lodging of the Decree and until EPA approves the Remedial Action Construction Completion, Settling Defendants shall submit progress reports to EPA on a monthly basis, or as otherwise requested by

EPA. The reports must cover all activities that took place during the prior reporting period, including:

(a) The actions that have been taken toward achieving compliance with the Decree;

(b) A summary of all results of sampling, tests, and all other data received or generated by Settling Defendants;

(c) A description of all deliverables that Settling Defendants submitted to EPA;

(d) A description of all activities relating to Remedial Action Construction that are scheduled for the next four weeks;

(e) An updated Remedial Action Construction Schedule, together with information regarding percentage of completion, delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays;

(f) A description of any modifications to the work plans or other schedules that Settling Defendants have proposed or that have been approved by EPA; and

(g) A description of all activities undertaken in support of the Community Involvement Plan ("CIP") during the reporting period and those to be undertaken in the next six weeks.

**5.2** **Notice of Progress Report Schedule Changes**. If the schedule for any activity described in the Progress Reports, including activities required to be described under ¶ 7.1(d), changes, Settling Defendants shall notify EPA of such change at least seven days before performance of the activity.

## 6. DELIVERABLES

**6.1** **Applicability**. Settling Defendants shall submit deliverables for EPA approval or for EPA comment as specified in the SOW. If neither is specified, the deliverable does not require EPA's approval or comment. Paragraphs 8.2 (In Writing) through 8.4 (Technical Specifications) apply to all deliverables. Paragraph 8.5 (Certification) applies to any deliverable that is required to be certified. Paragraph 8.6 (Approval of Deliverables) applies to any deliverable that is required to be submitted for EPA approval.

**6.2** **In Writing**. As provided in ¶ 78 of the Decree, all deliverables under this SOW must be in writing unless otherwise specified.

**6.3** **General Requirements for Deliverables.** All deliverables must be submitted by the deadlines in the Remedial Design Schedule or Remedial Action Schedule, as applicable. Settling Defendants shall submit all deliverables to EPA in electronic form. Technical specifications for sampling and monitoring data and spatial data are addressed in ¶ 8.4. All other deliverables shall be submitted to EPA in the electronic form specified by the EPA Project Coordinator. If any deliverable includes maps, drawings, or other exhibits

that are larger than 8.5” by 11”, Settling Defendants shall also provide EPA with paper copies of such exhibits.

**6.4 Technical Specifications**

(a) Sampling and monitoring data should be submitted in accordance with the EPA Region 4 Superfund Environmental Data Submission Procedure (July 2019). The standard Region 4 EDD format is available at: https://www.epa.gov/superfund/region-4-superfund-electronic-data-submission.Other delivery methods may be allowed if electronic direct submission presents a significant burden or as technology changes.

(b) Spatial data, including spatially referenced data and geospatial data, should be submitted: (1) in accordance with the EPA Region 4 Superfund Environmental Data Submission Procedure (July 2019). The standard Region 4 spatial format is available at: https://www.epa.gov/superfund/region-4-superfund-electronic-data-submission; and (2) as unprojected geographic coordinates in decimal degree format using North American Datum 1983 (“NAD83”) or World Geodetic System 1984 (WGS84) as the datum. If applicable, submissions should include the collection method(s). Projected coordinates may optionally be included but must be documented. Spatial data should be accompanied by metadata, and such metadata should be compliant with the Federal Geographic Data Committee (“FGDC”) Content Standard for Digital Geospatial Metadata and its EPA profile, the EPA Geospatial Metadata Technical Specification. An add-on metadata editor for ESRI software, the EPA Metadata Editor (“EME”), complies with these FGDC and EPA metadata requirements and is available at https://edg.epa.gov/EME/.

(c) Each file must include an attribute name for each site unit or sub-unit submitted. Consult https://www.epa.gov/geospatial/geospatial-policies-and-standards for any further available guidance on attribute identification and naming.

(d) Spatial data submitted by Settling Defendants does not, and is not intended to, define the boundaries of the Site.

**6.5 Certification**. All deliverables that require compliance with this paragraph must be signed by the Settling Defendants’ Project Coordinator, or other responsible official of Settling Defendants, and must contain the following statement:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and

complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

**6.6 Approval of Deliverables**

(a) **Initial Submissions**

(1) After review of any deliverable that is required to be submitted for EPA approval under the Decree or the SOW, EPA shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

(2) EPA also may modify the initial submission to cure deficiencies in the submission if: (i) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

(b) **Resubmissions**. Upon receipt of a notice of disapproval under ¶ 8.6(a) (Initial Submissions), or if required by a notice of approval upon specified conditions under ¶ 8.6(a), Settling Defendants shall, within _30_ days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the deliverable for approval. After review of the resubmitted deliverable, EPA may: (1) approve, in whole or in part, the resubmission; (2) approve the resubmission upon specified conditions; (3) modify the resubmission; (4) disapprove, in whole or in part, the resubmission, requiring Settling Defendants to correct the deficiencies; or (5) any combination of the foregoing.

(c) **Implementation**. Upon approval, approval upon conditions, or modification by EPA under ¶ 8.6(a) (Initial Submissions) or ¶ 8.6(b) (Resubmissions), of any deliverable, or any portion thereof: (1) such deliverable, or portion thereof, will be incorporated into and enforceable under the Decree; and (2) Settling Defendants shall take any action required by such deliverable, or portion thereof. The implementation of any non-deficient portion of a deliverable submitted or resubmitted under ¶ 8.6(a) or ¶ 8.6(b) does not relieve Settling Defendants of any liability for stipulated penalties under Section XIII (Stipulated Penalties) of the Decree.

(d) If: (1) an initially submitted deliverable contains a material defect and the conditions are met for modifying the deliverable under ¶ 8.6(a)(2); or (2) a resubmitted deliverable contains a material defect; then the material defect constitutes a lack of compliance for purposes of this Paragraph.

**6.7 Supporting Deliverables**. Settling Defendants shall submit each of the following supporting deliverables for EPA approval, except as specifically provided. Settling

Defendants shall develop the deliverables in accordance with all applicable regulations, guidances, and policies (see Section 11 (References)). Settling Defendants shall update each of these supporting deliverables as necessary or appropriate during the course of the Work, and/or as requested by EPA.

(a) **Health and Safety Plan ("HASP")**. The HASP describes all activities to be performed to protect on site personnel and area residents from physical, chemical, and all other hazards posed by the Work. Settling Defendants shall develop the HASP in accordance with EPA's *Emergency Responder Health and Safety Manual* and Occupational Safety and Health Administration ("OSHA") requirements under 29 C.F.R. §§ 1910 and 1926. The HASP should cover Remedial Design activities and should be, as appropriate, updated to cover activities during the Remedial Action and updated to cover activities after Remedial Action completion. EPA does not approve the HASP but will review it to ensure that all necessary elements are included and that the plan provides for the protection of human health and the environment.

(b) **Emergency Response Plan ("ERP")**. The ERP must describe procedures to be used in the event of an accident or emergency at the Site (for example, power outages, water impoundment failure, treatment plant failure, slope failure, etc.). The ERP must include:

(1) Name of the person or entity responsible for responding in the event of an emergency incident;

(2) Plan and date(s) for meeting(s) with the local community, including local, State, and federal agencies involved in the cleanup, as well as local emergency squads and hospitals;

(3) Spill Prevention, Control, and Countermeasures ("SPCC") Plan (if applicable), consistent with the regulations under 40 C.F.R. part 112, describing measures to prevent, and contingency plans for, spills and discharges;

(4) Notification activities in accordance with ¶ 5.5(b) (Release Reporting) in the event of a release of hazardous substances requiring reporting under CERCLA § 103 or EPCRA § 304; and

(5) A description of all necessary actions to ensure compliance with ¶ 5.5 of the SOW in the event of an occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site that constitutes an emergency or may present an immediate threat to public health or welfare or the environment.

(c) **Field Sampling Plan ("FSP")**. The FSP addresses all sample collection activities. The FSP must be written so that a field sampling team unfamiliar with the project would be able to gather the samples and field information required. Settling Defendants shall develop the FSP in accordance with *Guidance for*

*Conducting Remedial Investigations and Feasibility Studies*, EPA/540/G 89/004 (Oct. 1988).

(d) **Quality Assurance Project Plan ("QAPP")**. The QAPP must include a detailed explanation of Settling Defendants' quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance, and monitoring samples. Settling Defendants shall develop the QAPP in accordance with EPA Directive CIO 2105.1 (Environmental Information Quality Policy, 2021), the most recent version of *Quality Management Systems for Environmental Information and Technology Programs – Requirements with Guidance for Use*, ASQ/ANSI E-4 (Feb. 2014, and *Guidance for Quality Assurance Project Plans*, EPA QA/G-5, EPA Office of Environmental Information (Dec. 2002). Settling Defendants shall collect, produce, and evaluate all environmental information at the Site in accordance with the approved QAPP.

(e) **Site Wide Monitoring Plan ("SWMP")**. The purpose of the SWMP is to obtain baseline information regarding the extent of contamination in affected media at the Site; to obtain information, through short- and long- term monitoring, about the movement of and changes in contamination throughout the Site, before and during implementation of the Remedial Action; to obtain information regarding contamination levels to determine whether Performance Standards are achieved; and to obtain information to determine whether to perform additional actions, including further Site monitoring. The SWMP must include:

(1) Description of the environmental media to be monitored;

(2) Description of the data collection parameters, including existing and proposed monitoring devices and locations, schedule and frequency of monitoring, analytical parameters to be monitored, and analytical methods employed;

(3) Description of how performance data will be analyzed, interpreted, and reported, and/or other Site-related requirements;

(4) Description of verification sampling procedures;

(5) Description of deliverables that will be generated in connection with monitoring, including sampling schedules, laboratory records, monitoring reports, and monthly and annual reports to EPA and State agencies;

(6) Description of proposed additional monitoring and data collection actions (such as increases in frequency of monitoring, and/or installation of additional monitoring devices in the affected areas) in the event that results from monitoring devices indicate changed conditions (such as higher than expected concentrations of the contaminants of concern or groundwater contaminant plume movement);

(7) A plan to immediately provide to EPA any unvalidated sampling data from Community Areas as defined in ¶ 8.7(f) affected by the remedy that exceed removal management levels or three times remedial cleanup levels, whichever is lower; and

(8) A plan to expedite sampling and analysis in Community Areas as defined in ¶ 8.7(f) affected by the remedy (particularly in situations where EPA determines that unvalidated sampling data indicates substantial exceedances of cleanup standards), including procedures for expedited analysis, validation, and communication of sampling results to affected communities.

(f) **Community Impacts Mitigation Plan ("CIMP")**. The CIMP describes all activities to be performed: (1) to reduce and manage the impacts from remedy implementation (*e.g.*, air emissions, traffic, noise, odor, temporary or permanent relocation) to residential areas, schools, playgrounds, healthcare facilities, or recreational or impacted public areas ("Community Areas") from and during remedy implementation, (2) to conduct monitoring in Community Areas of impacts from remedy implementation, (3) to expeditiously communicate validated remedy implementation monitoring data, (4) to make adjustments during remedy implementation in order to further reduce and manage impacts from remedy implementation to affected Community Areas, (5) to expeditiously restore community resources damaged during remediation such as roads and culverts, and (6) to mitigate the economic effects that the Remedial Action will have on the community by structuring remediation contracts to allow more local business participation. The CIMP should contain information about impacts to Community Areas that is sufficient to assist EPA's Project Coordinator in performing the evaluations recommended under the *Superfund Community Involvement Handbook*, OLEM 9230.0-51 (March 2020), pp. 53-56.

(g) **Construction Quality Assurance Plan ("CQAP") and Construction Quality Control Plan ("CQCP")**. The purpose of the CQAP is to describe planned and systemic activities that provide confidence that the Remedial Action construction will satisfy all plans, specifications, and related requirements, including quality objectives. The purpose of the CQCP is to describe the activities to verify that Remedial Action construction has satisfied all plans, specifications, and related requirements, including quality objectives. The CQAP/CQCP ("CQA/CP") must:

(1) Identify, and describe the responsibilities of, the organizations and personnel implementing the CQA/CP;

(2) Describe the Performance Standards required to be met to achieve Completion of the Remedial Action;

(3) Describe the activities to be performed: (i) to provide confidence that Performance Standards will be met; and (ii) to determine whether Performance Standards have been met;

(4) Describe verification activities, such as inspections, sampling, testing, monitoring, and production controls, under the CQA/CP;

(5) Describe industry standards and technical specifications used in implementing the CQA/CP;

(6) Describe procedures for tracking construction deficiencies from identification through corrective action;

(7) Describe procedures for documenting all CQA/CP activities; and

(8) Describe procedures for retention of documents and for final storage of documents.

(h) **Transportation and Off-Site Disposal Plan ("TODP")**. The TODP describes plans to ensure compliance with ¶ 5.6 (Off-Site Shipments). The TODP must include:

(1) Proposed times and routes for off-site shipment of Waste Material;

(2) Identification of communities, including underserved communities referred to in Executive Order 14008, § 222(b) (Feb. 1, 2021), affected by shipment of Waste Material; and

(3) Description of plans to minimize impacts (*e.g.*, noise, traffic, dust, odors) on affected communities.

(i) **O&M Plan**. The O&M Plan describes the requirements for inspecting, operating, and maintaining the Remedial Action. Settling Defendants shall develop the O&M Plan in accordance with *Guidance for Management of Superfund Remedies in Post Construction*, OLEM 9200.3-105 (Feb. 2017). The O&M Plan must include the following additional requirements:

(1) Description of Performance Standards required to be met to implement the Amended Record of Decision;

(2) Description of activities to be performed: (i) to provide confidence that Performance Standards will be met; and (ii) to determine whether Performance Standards have been met;

(3) **O&M Reporting**. Description of records and reports that will be generated during O&M, such as daily operating logs, laboratory records, records of operating costs, reports regarding emergencies, personnel and maintenance records, monitoring reports, and monthly and annual reports to EPA and State agencies;

(4) Description of corrective action in case of systems failure, including: (i) alternative procedures to prevent the release or threatened release of

Waste Material which may endanger public health and the environment or may cause a failure to achieve Performance Standards; (ii) analysis of vulnerability and additional resource requirements should a failure occur; (iii) notification and reporting requirements should O&M systems fail or be in danger of imminent failure; and (iv) community notification requirements; and

(5) Description of corrective action to be implemented in the event that Performance Standards are not achieved; and a schedule for implementing these corrective actions.

(j) **O&M Manual**. The O&M Manual serves as a guide to the purpose and function of the equipment and systems that make up the remedy. Settling Defendants shall develop the O&M Manual in accordance with *Guidance for Management of Superfund Remedies in Post Construction*, OLEM 9200.3-105 (Feb. 2017).

## 7. SCHEDULES

**7.1 Applicability and Revisions**. All deliverables and tasks required under this SOW must be submitted or completed by the deadlines or within the time durations listed in the Remedial Action Schedule set forth below. Settling Defendants may submit proposed revised Remedial Action Schedule for EPA approval. Upon EPA's approval, the revised Remedial Action Schedule supersede the Remedial Action Schedule set forth below, and any previously approved Remedial Action Schedule.

**7.2 Remedial Action Schedule**

| | **Description of Deliverable / Task** | **¶ Ref.** | **Deadline** |
|---|---|---|---|
| 2 | Award Remedial Action contract | | 60days after EPA Notice of Authorization to Proceed with Remedial Action |
| 3 | RAWP | 5.1 | 30 days after EPA Notice of Authorization to Proceed with Remedial Action |
| 5 | Pre-Construction Conference | 5.3(a) | 15 days after Approval of RAWP |
| 6 | Start of Construction | | 30 days after Approval of RAWP |
| 7 | Completion of Construction | | |
| 8 | Pre-final Inspection | 5.7(b) | 10 days after completion of construction |
| 9 | Pre-final Inspection Report | 5.7(d) | 45 days after completion of Pre-final Inspection |
| 10 | Final Inspection | | 10 days after Completion of Work identified in Pre-final Inspection Report |
| 11 | Remedial Action Report | 5.7(d) | 60 days after Final Inspection |
| 12 | Monitoring Report | 5.8(b) | 30 days after remedial action report |
| 13 | Work Completion Report | 5.10(b) | |
| 14 | Periodic Review Support Plan | 5.9 | Five years after Start of Remedial Action Construction |

## 8. STATE PARTICIPATION

**8.1** **Copies**. Settling Defendants shall, at any time they send a deliverable to EPA, send a copy of such deliverable to the State. EPA shall, at any time it sends a notice, authorization, approval, disapproval, or certification to Settling Defendants, send a copy of such document to the State.

**8.2** **Review and Comment**. The State will have a reasonable opportunity for review and comment prior to:

(a) Any EPA notice to proceed under ¶ 3.3 (Procedures for Disapproval/Notice to Proceed);

(b) Any EPA approval or disapproval under ¶ 8.6 (Approval of Deliverables) of any deliverables that are required to be submitted for EPA approval; and

(c) Any approval or disapproval of the Construction Phase under ¶ 5.7 (Remedial Action Construction Completion), any disapproval of, or Certification of Remedial Action Completion under ¶ 5.8 (Certification of Remedial Action Completion), and any disapproval of, or Certification of Work Completion under ¶ 5.10 (Certification of Work Completion).

## 9. REFERENCES

**9.1** The following regulations and guidance documents, among others, apply to the Work. Any item for which a specific URL is not provided below is available on one of the three EPA web pages listed in ¶ 11.2:

(a) A Compendium of Superfund Field Operations Methods, OSWER 9355.0-14, EPA/540/P-87/001a (Aug. 1987).

(b) CERCLA Compliance with Other Laws Manual, Part I: Interim Final, OSWER 9234.1-01, EPA/540/G-89/006 (Aug. 1988).

(c) Guidance for Conducting Remedial Investigations and Feasibility Studies, OSWER 9355.3-01, EPA/540/G-89/004 (Oct. 1988).

(d) CERCLA Compliance with Other Laws Manual, Part II, OSWER 9234.1-02, EPA/540/G-89/009 (Aug. 1989).

(e) Guidance on EPA Oversight of Remedial Designs and Remedial Actions Performed by Potentially Responsible Parties, OSWER 9355.5-01, EPA/540/G90/001 (Apr.1990).

(f) Guidance on Expediting Remedial Design and Remedial Actions, OSWER 9355.5-02, EPA/540/G-90/006 (Aug. 1990).

(g) Guide to Management of Investigation-Derived Wastes, OSWER 9345.3-03FS (Jan. 1992).

(h) Permits and Permit Equivalency Processes for CERCLA On-Site Response Actions, OSWER 9355.7-03 (Feb. 1992).

(i) Guidance for Conducting Treatability Studies under CERCLA, OSWER 9380.3-10, EPA/540/R-92/071A (Nov. 1992).

(j) National Oil and Hazardous Substances Pollution Contingency Plan; Final Rule, 40 C.F.R. part 300 (Oct. 1994).

(k) Guidance for Scoping the Remedial Design, OSWER 9355.0-43, EPA/540/R-95/025 (Mar. 1995).

(l) Remedial Design/Remedial Action Handbook, OSWER 9355.0-04B, EPA/540/R-95/059 (June 1995).

(m) EPA Guidance for Data Quality Assessment, Practical Methods for Data Analysis, QA/G-9, EPA/600/R-96/084 (July 2000).

(n) Comprehensive Five-year Review Guidance, OSWER 9355.7-03B-P, EPA/540-R-01-007 (June 2001).

(o) Guidance for Quality Assurance Project Plans, EPA QA/G-5, EPA Office of Environmental Information (Dec. 2002) https://www.epa.gov/quality/guidance-quality-assurance-project-plans-epa-qag-5.

(p) Institutional Controls: Third-Party Beneficiary Rights in Proprietary Controls, OECA (Apr. 2004).

(q) EPA Guidance on Systematic Planning Using the Data Quality Objectives Process, QA/G-4, EPA/240/B-06/001 (Feb. 2006).

(r) EPA Requirements for Quality Management Plans, QA/R-2, EPA/240/B-01/002 (Mar. 2001, reissued May 2006).

(s) EPA National Geospatial Data Policy, CIO Policy Transmittal 05-002 (Aug. 2005), https://www.epa.gov/geospatial/epa-national-geospatial-data-policy.

(t) Summary of Key Existing EPA CERCLA Policies for Groundwater Restoration, OSWER 9283.1-33 (June 2009).

(u) Principles for Greener Cleanups (Aug. 2009), https://www.epa.gov/greenercleanups/epa-principles-greener-cleanups.

(v) Close Out Procedures for National Priorities List Sites, OSWER 9320.2-22 (May 2011).

(w) Groundwater Road Map: Recommended Process for Restoring Contaminated Groundwater at Superfund Sites, OSWER 9283.1-34 (July 2011).

(x) Recommended Evaluation of Institutional Controls: Supplement to the "Comprehensive Five-Year Review Guidance," OSWER 9355.7-18 (Sep. 2011).

(y) Plan EJ 2014: Legal Tools, EPA Office of General Counsel (Dec. 2011), https://www.epa.gov/environmentaljustice/plan-ej-2014-legal-tools.

(z) Construction Specifications Institute's MasterFormat, 2020 or more recent edition, available from the Construction Specifications Institute, http://www.csinet.org/masterformat.

(aa) Updated Superfund Response and Settlement Approach for Sites Using the Superfund Alternative Approach, OSWER 9200.2-125 (Sep. 2012)

(bb) Institutional Controls: A Guide to Planning, Implementing, Maintaining, and Enforcing Institutional Controls at Contaminated Sites, OSWER 9355.0-89, EPA/540/R-09/001 (Dec. 2012), https://semspub.epa.gov/work/HQ/175446.pdf.

(cc) Institutional Controls: A Guide to Preparing Institutional Controls Implementation and Assurance Plans at Contaminated Sites, OSWER 9200.0-77, EPA/540/R-09/02 (Dec. 2012), https://semspub.epa.gov/work/HQ/175449.pdf.

(dd) EPA's Emergency Responder Health and Safety Manual, OSWER 9285.3-12 (July 2005 and updates), https://www.epaosc.org/_HealthSafetyManual/manual-index.htm.

(ee) Broader Application of Remedial Design and Remedial Action Pilot Project Lessons Learned, OSWER 9200.2-129 (Feb. 2013).

(ff) Guidance for Evaluating Completion of Groundwater Restoration Remedial Actions, OSWER 9355.0-129 (Nov. 2013).

(gg) Groundwater Remedy Completion Strategy: Moving Forward with the End in Mind, OSWER 9200.2-144 (May 2014).

(hh) Quality Management Systems for Environmental Information and Technology Programs -- Requirements with Guidance for Use, ASQ/ANSI E-4 (February 2014), available at https://webstore.ansi.org/.

(ii) Guidance for Management of Superfund Remedies in Post Construction, OLEM 9200.3-105 (Feb. 2017), https://www.epa.gov/superfund/superfund-post-construction-completion.

(jj) Advanced Monitoring Technologies and Approaches to Support Long-Term Stewardship (July 20, 2018), https://www.epa.gov/enforcement/use-advanced-monitoring-technologies-and-approaches-support-long-term-stewardship.

(kk) Superfund Community Involvement Handbook, OLEM 9230.0-51 (March 2020). More information on Superfund community involvement is available on the Agency's Superfund Community Involvement Tools and Resources web page at https://www.epa.gov/superfund/superfund-community-involvement-tools-and-resources.

(ll) EPA directive CIO 2105.1 (Environmental Information Quality Policy, 2021), https://www.epa.gov/sites/production/files/2021-04/documents/environmental_information_quality_policy.pdf.

**9.2** A more complete list may be found on the following EPA web pages:

(a) Laws, Policy, and Guidance at https://www.epa.gov/superfund/superfund-policy-guidance-and-laws;

(b) Search Superfund Documents at https://www.epa.gov/superfund/search-superfund-documents; and

(c) Test Methods Collections at: https://www.epa.gov/measurements/collection-methods.

**9.3** For any regulation or guidance referenced in the Decree or SOW, the reference will be read to include any subsequent modification, amendment, or replacement of such regulation or guidance. Such modifications, amendments, or replacements apply to the Work only after Settling Defendants receive notification from EPA of the modification, amendment, or replacement.